# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF WEST VIRGINIA

# AT BECKLEY

CHARLES A. TRAMMELL,

    Plaintiff,

v.                                                                CIVIL ACTION NO. 5:19-cv-00419

THE SYLVANUS GROUP, LLC and
AERO-SMITH, INC. and GEORGE SMITH
and ROBERT TAPP and SEAN MARSHALL,

    Defendants.

## MEMORANDUM OPINION AND ORDER

Pending is Plaintiff Charles A. Trammell's Motion to Remand and for Fees and Expenses [Doc. 6]. The matter is ready for adjudication.

## I.

On April 4, 2019, Mr. Trammell instituted this action in the Circuit Court of Greenbrier County against The Sylvanus Group, LLC ("Sylvanus"), Aero-Smith, Inc. ("Aero-Smith"), George Smith, Robert Tapp, and Sean Marshall. Mr. Trammell alleged (1) violation of the West Virginia Wage Payment and Collection Act (the "WVWPCA"), (2) Breach of Promise and Fraudulent Inducement, and (3) Breach of Contract [Doc. 1-1]. The complaint sought "all damages as allowed under West Virginia law, including punitive damages" as well as fees and costs [Doc. 1-1 at 5–6].

On May 30, 2019, Sylvanus removed based on "diversity jurisdiction, federal regulation of aviation, regulation of interstate commerce, and interstate communications between

and among the parties." [Doc. 1 at 4]. Sylvanus specifically alleges that Mr. Trammell is a resident of New Mexico; Aero-Smith is a Maryland corporation; Mr. Tapp and Mr. Marshall are West Virginia residents; and Sylvanus is alleged to have Nevada residency.

On June 14, 2019, Mr. Trammell moved to remand. Mr. Trammell contends that Sylvanus has insufficiently alleged the amount in controversy. Further, Mr. Trammell contends that Sylvanus cannot do so, inasmuch as his complaint contains a clause limiting damages below the jurisdictional minimum. Finally, Mr. Trammell summarily requests attorney fees, asserting, "[T]he removal of a case that specifically states that the claims do not meet the jurisdictional requirement, [sic] is one that warrants the award requested." [Doc. 7].

In response, Sylvanus asserts that the notice of removal sufficiently alleged the amount in controversy. Sylvanus asserts it need not provide evidence of the amount in controversy until challenged by motion to remand. In support of its contention that the amount in controversy is above $75,000, Sylvanus points to a $43,000 settlement offer Mr. Trammell rejected prior to filing suit. This, Sylvanus contends, ineluctably demonstrates that the amount in controversy is *at least* $43,000 and, when taking into account the possibility of treble damages under the WVWPCA, clearly exceeds $75,000.

## II.

Congress has provided an avenue for a case originally filed in state court to be removed to federal court. Specifically, "any civil action brought in a state court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). District courts have "original

jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." *Id.* § 1332(a)(1).

A defendant seeking removal "need only *allege* federal jurisdiction with a short plain statement" of the bases for jurisdiction. *Strawn v. AT&T Mobility LLC*, 530 F.3d 293, 296 (4th Cir. 2008); *see also Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994). If removal is challenged, the burden is on the defendant to "demonstrat[e] that removal jurisdiction is proper." *Strawn*, 530 F.3d at 297. In determining whether jurisdiction exists, "federal courts have 'rigorously enforced' the amount in controversy requirement." *Ellison v. Credit Acceptance Corp.*, 177 F. Supp. 3d 967, 969 (S.D.W. Va. 2016) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938)). "But federal courts have avoided protracted litigation over complex jurisdictional rules" and thus "the amount in controversy inquiry remains relatively simple – the amount in controversy is what the plaintiff claims to be entitled to or demands." *Id.* at 969–70 (internal quotation marks omitted).

"In the Southern District of West Virginia, we apply a preponderance of the evidence standard when the state court complaint does not include an *ad damnum* clause claiming an amount over the jurisdictional minimum." *Scaralto v. Ferrell*, 826 F. Supp. 2d 960, 963 (S.D.W. Va. 2011). The "defendant must supply evidence, and the court bases its decision to remove on the record that exists at the time the petition for removal was filed." *Id.* The amount in controversy is determined at the time of removal. *See Hutchens v. Progressive Paloverde Ins. Co.*, 211 F. Supp. 2d 788, 791 (S.D.W. Va. 2002). "Lacking an expressed statement of the amount claimed, a court looks to the totality of the circumstances, including the complaint, the type and extent of the

plaintiff's injuries, the amounts awarded in similar cases, and losses incurred to date of removal." *Scaralto*, 826 F. Supp. 2d at 968. "If the court thinks that a reasonable plaintiff would claim more than $75,000, then the defendant has met its burden of proof." *Id.*

A court may also consider punitive damages, if available under the law, when determining the amount in controversy. *See Med-Surg Group, Inc. v. Aetna Health Mgmt., Inc.*, 832 F. Supp. 2d 659, 661–62 (S.D.W. Va. 2011); *see also id.* at 661 (noting that it is "legally possible to obtain punitive damages" where the complaint alleges fraud and misrepresentation in addition to breach of contract). The amount of punitive damages "should bear a reasonable relationship to the harm that was likely to occur and the harm that actually occurred." *Id.* at 661 (finding no reasonable relationship between harm caused by under-billing, resulting in $5,723.50 in actual damages, and the $69,300 in punitive damages necessary for the amount in controversy to be met).

While a plaintiff may generally limit the relief requested in the complaint to avoid federal jurisdiction, *see Red Cab Co.*, 303 U.S. at 288–89, that is not necessarily the case in West Virginia. In West Virginia a specific request for or limitation on damages does not foreclose relief above that amount. *See* W. Va. R. Civ. P. 54(c) ("[E]very final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings."). Thus, a plaintiff may "limit" the demand below the jurisdictional threshold, yet ultimately recover beyond that limit in West Virginia. *See Berry v. Nationwide Mut. Fire Ins. Co.*, 181 W. Va. 168, 177, 381 S.E.2d 367, 376 (1989) (stating, "it is not the amount stated in the *ad damnum* clause but the actual proof of the plaintiff's damages which will control"). My colleagues have thus generally required more than a bare limitation on relief to find that the

4

amount in controversy requirement is not met. *See McCoy v. Erie Ins. Co.*, 147 F. Supp. 2d 481, 485 (S.D.W. Va. 2001) (requiring a "formal, truly binding, pre-removal stipulation signed by counsel and his client explicitly limiting recovery"); *see also Ellison*, 177 F. Supp. 3d at 968 (accepting a contemporaneously filed stipulation limiting damages and remanding case).

In sum, the Court must carefully analyze whether removal is proper and "resolve all doubts about the propriety of removal in favor of retained state court jurisdiction." *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232 (4th Cir. 1993) (citation omitted); *see also Mulcahey*, 29 F.3d at 151 ("Because removal jurisdiction raises significant federalism concerns, we must strictly construe removal jurisdiction.") (citation omitted).

## III.

As an initial matter, the Court notes that the issue is not resolved by reference to Mr. Trammell's limitation on damages in his complaint. While "Plaintiff affirmatively state[d] that the amount in controversy does not meet or exceed $75,000.00," Mr. Trammell did not value his claim [Doc. 1-1 at 4]. Nor did Mr. Trammell file a binding stipulation with his complaint limiting his damages below $75,000.00. *See McCoy*, 147 F. Supp. 2d at 485. As such, the Court must examine the record at the time of removal and determine whether Sylvanus has met its burden to establish the amount in controversy by a preponderance of the evidence.

In his complaint, Mr. Trammell alleges that Sylvanus failed to timely pay "wages, overtime and fringe benefits, including many expenses," such as $7,500.00 in moving expenses [Doc. 1-1]. Mr. Trammell further alleges that he "work[ed] extensively for a period in excess of 2 months" for which he was not paid. Mr. Trammell also alleges that, in addition to the lost wages, he suffered annoyance, inconvenience, and attorney fees as a result of Sylvanus's alleged breach

5

of the WVWPCA. Mr. Trammell asserts in Count Two an entitlement to punitive damages based on Sylvanus's conduct. Then, in Count Three, Mr. Trammell asserts a claim for breach of contract resulting in "substantial financial loss" from the failure to pay wages and fringe benefits as promised. In sum, Mr. Trammell requests "that he be awarded all damages as allowed under West Virginia law, including punitive damages . . . [and] that he receive such other relief as is just and proper." [Doc. 1-1 at 6].

The WVWPCA provides, in relevant part, that when an employer fails to pay or provide fringe benefits to an employee "at the intervals of time as provided in section three of this article" the employee may recover "the amount of such claim proven to be due and unpaid, with legal interest thereon until paid." W. Va. Code § 21-5-6; *see also id.* § 21-5-3(a) (requiring payment of employees at least twice a month). The WVWPCA further expressly provides for the recovery of reasonable attorney fees from the defendant, "in the event that any judgment is awarded to the plaintiff." *Id.* § 21-5-12(b).

Absent speculation, the Court cannot say that the amount in controversy in this matter exceeds the jurisdictional threshold by a preponderance of the evidence. Indeed, the most concrete figure – the prior settlement offer – establishes only that Mr. Trammell believed his claim was worth more than $43,000. *See Scaralto*, 826 F. Supp. 2d at 964. This settlement figure included reimbursement for $7,500.00 in moving expenses, unpaid wages, 45 days of per diem, and $21,549 for "West Virginia Chapter 21, WPC." [Doc. 6-2 at 2]. The Court may consider this as at least a baseline amount of the actual damages sought.

However, on the record at the time of removal and the limited evidence offered by Sylvanus, the Court cannot determine the amount in controversy beyond this baseline figure.

6

Indeed, the complaint does not indicate that Mr. Trammell seeks or would be entitled to treble damages under the WVWCPA. Mr. Trammell does not allege that he was fired by Sylvanus and then not paid for his work. Mr. Trammell only alleges that he was not paid for two months. These facts do not give rise to enhanced damages under the WVWCPA.[1] Nor does Sylvanus proffer any evidence to suggest the amount of punitive damages to which Mr. Trammell claims to be entitled. While it is true that punitive damages may be awarded in cases involving bad faith and may be considered when determining the amount in controversy, there must be a reasonable relationship between the actual harm and the amount of punitive damages claimed. Thus, for the Court to conclude that the amount in controversy exceeds the jurisdictional threshold based upon punitive damages, there must be some reasonable relationship between Mr. Trammell's actual damages – failure to pay for two months, including promised fees and expenses, amounting to approximately $43,000 – and a punitive damages award of $32,000.

Again, the removing party, when challenged, bears the burden of demonstrating by a preponderance of the evidence that the amount in controversy requirement is met. Mere allegations and speculation do not satisfy this requirement. *See Bartnikowski v. NVR, Inc.*, 307 F. App'x 730, 738 (4th Cir. 2009) (noting an estimate of overtime hours worked in a damages calculation "is pure guesswork, and leaves significant uncertainty about the actual amount in

---

[1] Sylvanus broadly argues that the WVWCPA allows for treble damages. This argument, however, fails to recognize the limitations of such relief. Indeed, under the WVWCPA if an employer refuses to pay wages due to an employee who has been discharged, the employer is liable for "two times that unpaid amount as liquidated damages." *See* W. Va. Code § 21-5-4(e) (allowing for liquidated damages in this form only for failure "to pay an employee wages as required under this section" and providing "[t]his section regulates the timing of wage payments upon separation from employment"). Neither the record as of the time of removal or the complaint itself reflect that Mr. Trammell asserts an entitlement to liquidated damages. Given that diversity jurisdiction is fixed at the time of removal, the Court may not rely on the Defendants' post-removal arguments to find that Mr. Trammell seeks these damages. These damages may ultimately be available to Mr. Trammell, but the amount in controversy is determined by the record at the time of removal.

controversy"); *see also Delph v. Allstate Home Mortg., Inc.*, 478 F. Supp. 2d 852, 854–55 (D. Md. 2007) (finding the defendant failed to establish the amount in controversy by a preponderance of the evidence where it simply "speculate[d] that the amount could exceed the jurisdictional minimum"). The Court may not simply accept Sylvanus's allegation that Mr. Trammell seeks $32,000 in punitive damages, such that his claim would rise above $75,000. Similarly, the Court may not accept Sylvanus's allegation that another plaintiff could be added to the lawsuit to find that the amount in controversy would be met,[2] nor may the Court rely on Sylvanus's contention that Mr. Trammell seeks treble damages. Without any basis in the record, this is no more than speculation, upon which the Court cannot blindly rely.

Finally, while Sylvanus ultimately did not present any argument on this ground, Sylvanus indicated in its notice of removal that both diversity and federal question jurisdiction were implicated. Indeed, Sylvanus stated that "[t]his action is one which implicates Federal Aviation Regulations (FARs)." [Doc. 1 at 3]. Inasmuch as Mr. Trammell's complaint contains no claims that arise under federal law, does not raise any issue of federal law, reference any federal law, or require interpretation of federal regulations, the Court cannot find that any federal question is present on the face of the well-pleaded complaint. *See Nordan v. Blackwater Sec. Consulting, LLC*, 260 F.3d 576, 584 (4th Cir. 2006). The mere fact that Mr. Trammell was employed by an aviation company and may have been subject to some federal aviation regulations does not somehow vest the Court with federal question jurisdiction. *See, e.g.*, *Merrell Dow Pharm., Inc. v.*

---

[2] Even were the Court to accept Sylvanus's contention that the complaint leaves open the possibility that another plaintiff will be added to the action, this would not impact the Court's analysis. Indeed, even if another plaintiff was joined in the suit and alleged damages against Sylvanus, there is no basis for the Court to find that the interests of the plaintiffs would be common and undivided such that the damages could be aggregated. *See, e.g.*, *Feikema v. Texaco, Inc.*, 16 F.3d 1408, 1412 (4th Cir. 1994) (holding that damages cannot be aggregated unless the plaintiffs' claims arise from a common and undivided interest, even if the claims arise from a common cause).

*Thompson*, 478 U.S. 804, 813 (1986) (stating, the "mere presence of a federal issue in a state cause of action does not confer federal question jurisdiction").

The Court is mindful of the difficulty that defendants face in proving the amount in controversy when damages have been left unspecified in the complaint. However, the Court must also be mindful of the limitations of its own jurisdiction and may not add speculation to speculation to justify the exercise of its authority. The Court finds that Sylvanus has not met its burden to demonstrate, by a preponderance of the evidence, that the amount in controversy exceeds $75,000, or to demonstrate that federal question jurisdiction exists. As such, "federal jurisdiction is doubtful" and "remand is necessary." *Mulcahey*, 29 F.3d at 151.

Having decided to remand Mr. Trammell's case to state court, the Court must determine whether to award attorney's fees and costs. Under 28 U.S.C. § 1447(c), "[a]n order remanding [a] case may require payment of just costs and any actual expenses, including attorneys fees, incurred as a result of the removal." However, the Supreme Court has provided, "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447 only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). While the Court finds that Sylvanus failed to state any reasonable ground for removal on the basis of federal question jurisdiction, the same is not true for diversity jurisdiction. Indeed, as the preceding inquiry into the amount in controversy demonstrates, there is a legitimate question as to whether diversity jurisdiction exists in the instant case. As such, the Court cannot conclude that Sylvanus wholly lacked an objectively reasonable basis for removal.

## IV.

Accordingly, the Court **ORDERS** that Plaintiff Charles A. Trammell's Motion to Remand and for Fees and Expenses [**Doc. 6**] be **GRANTED IN PART** inasmuch as it seeks remand and **DENIED IN PART** inasmuch as it seeks an award of fees and expenses. The Court further **ORDERS** that the Motion to Dismiss Complaint by Individual Defendants [**Doc. 4**], counsel Rachel Hanna's Motion to Withdraw [**Doc. 21**], Defendants Robert Tapp and Sean Marshall's Motion for Extension of Time [**Doc. 26**], and Plaintiff Charles A. Trammell's Motion for a Status Conference [**Doc. 27**] be **DENIED AS MOOT**. The Court **REMANDS** this action to the Circuit Court of Greenbrier County.

The Clerk is directed to send copies of this Memorandum Opinion and Order to all counsel of record and any unrepresented party and a certified copy to the Clerk of the Circuit Court of Greenbrier County.

ENTERED: March 10, 2020

Frank W. Volk
United States District Judge